## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## CHICAGO DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) | Case No: 1:14-cv-3305 |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY – U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) ) ) ) ) ) | Judge: _____ Magistrate Judge: _____ |
| *Defendant.* | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking wrongfully withheld agency records relating to the so-called Voluntary Work Program for civil detainees at U.S. Immigration and Customs Enforcement (ICE) detention facilities.

2. Professor Stevens seeks declaratory, injunctive, and all other appropriate relief with respect to the unlawful withholding of these agency records by the United States Department of Homeland Security ("DHS") and its agency component ICE.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Jurisdiction lies to grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.

1

4. Venue is proper under 5 U.S.C. § 552(a)(4)(B) because Professor Stevens resides within this District.

## PARTIES

5. Plaintiff Jacqueline Stevens is a Professor of Political Science and the Director of the Deportation Research Clinic at Northwestern University. Her office and principal place of residence is in Cook County, Illinois.

6. Defendant U.S. Department of Homeland Security – Immigration and Customs Enforcement is an executive agency component of the United States government and is principally responsible for enforcing federal immigration laws. ICE has possession and control over all agency records Professor Stevens seeks. DHS and ICE are agencies within the meaning of 5 U.S.C. § 552(f)(1).

## NATURE OF THE ACTION

**A. The Detention Bed Quota and Its Costs**

7. Congress requires DHS to "maintain a level of not less than 34,000 detention beds" per night to incarcerate people for civil immigration violations. Department of Homeland Security Appropriations Act of 2014, H.R. 2217, 113th Cong. § 544 (2013).

8. To meet this congressionally imposed detention bed quota, DHS contracts with private prison companies that operate civil immigration jails for profit. These private companies include the Corrections Corporation of America ("CCA") and the GEO Group.

9. The detention bed quota currently costs taxpayers approximately $120 per detainee per day, or roughly $1.43 billion per year.

10. By contrast, alternatives to administrative detention, such as electronic monitoring and intensive supervision, cost an average of about $6 per individual per day.

11. These alternatives to detention have produced 94% appearance rates at immigration court hearings, while costing taxpayers an average of 95% less per individual as compared with detention.

**B. Hiding the True Cost of the Bed Quota through the "Voluntary" Work Program**

12. The true cost of the detention bed quota to American taxpayers could be over $400 million higher per year, were it not for ICE's "Voluntary Work Program" ("VWP").

13. Civil immigration detainees work in the VWP alongside private prison employees who are paid at rates established by the Service Contract Act, 41 U.S.C. §§ 351, *et seq.*, in food service, barbershop, janitorial, laundry, maintenance, and other jobs.

14. ICE and its private prison contractors pay these civil immigration detainees $1 per day for their work. The $1 per day pay rate dates back to the 1940s, when Congress first created the VWP to compensate detainees in internment and POW camps. In 1943, the pay rate was 80 cents per day, while the cost to the government of detaining each person was $1.

15. By contrast, a worker making minimum wage for doing the same tasks today would be paid between $58 and $80 per day, depending on the state. And a worker paid under the Service Contract Act, required for federal contractors, would be paid $89.60 to $263.44 per day, depending on the location and work performed.[1]

16. The VWP relies on approximately 4.2 million shifts per year of work performed by ICE detainees to control costs at privately run civil immigration detention facilities.

---

[1] The former is the 8-hour wage that GEO would need to pay a laundry worker in its La Salle Detention Center; the latter is the eight-hour wage that a plumber working in Manhattan's Varick Detention Center would be earning, according to the Register of Wage Determinations, Jun. 19,

17. Through her research, Professor Stevens has discovered that the contracting documents between private prison companies and ICE explicitly rely on the availability of a "detainee workforce" to staff ICE facilities and comply with Congress's bed quota.

18. Some of these documents even provide specific ratios of private prison employees to detainee laborers that will be necessary to fulfill federal contract requirements. These contracting documents include lengthy questions and answers between the private prison firms and ICE about the scope of detainee labor for the purpose of informing contractor bids.

19. At the CCA facility in Lumpkin, Georgia, detainees are paid $3 per day for certain jobs, including work as barbers. On information and belief, this is in response to detainee work shortages, and indicates the reliance on this program for work that is central to the daily operations of the private prisons.[2]

20. According to CCA data from its 2012 Annual Report filed with the SEC, Professor Stevens estimates that CCA made profits of $32 million from its ICE detention contracts. Using conservative assumptions and specific data on the Average Daily Population in CCA ICE facilities for 2012, she estimates that through relying on $1 per day detainee labor, CCA avoided $30 million per year in operations costs with detainee labor in the VWP.

**C. Paying for the Voluntary Work Program**

21. Federal law explicitly permits paying immigration detainees "allowances" for work performed. 8 U.S.C. § 1555(d).

22. Federal law also explicitly requires Congress to set the rates of such payments through the appropriations process. *Id.* § 1555.

---

[2] See ACLU of Georgia, *Prisoners of Profit: Immigrants and Detention in Georgia*, (May, 2012), p. 57 *available at* https://www.aclu.org/blog/immigrants-rights-prisoners-rights/prisoners-profit-immigrants-and-detention-georgia/.

23. Congress authorized the Immigration and Naturalization Service ("INS") to pay immigration detainees $1 per day under 8 USC § 1555(d) each year between 1949 and 1978.

24. But in 1979, the INS deleted the VWP from the budget it submitted to Congress and the item vanished from the agency's budget in the appropriations Act. *Cf.* Public Law 95-431, 92 Stat. 1027 (Oct. 10, 1978)("For . . . payment of allowances (at a rate not in excess of $1 per day) to aliens, while held in custody under the immigration laws, for work performed) *with* Public Law 96-68 (1979)(omitting any appropriation for allowances to immigration detainees).

25. Because Congress has not appropriated ICE funds to pay for the VWP, the agency pays for detainee work using "Imprest Funds" from the Department of the Treasury, according to documents released to Professor Stevens in response to a previous FOIA request.

26. Though the Treasury Department promulgated strict rules in 2001 limiting federal agencies' use of un-appropriated or off-budget, petty cash Imprest Funds, Professor Stevens' research shows that ICE and the private prison contractors used Imprest Funds in 2010 to pay civil immigration detainees who participate in the VWP, in apparent violation of Treasury Department rules and the separation of powers.

**D. Coercion and Lack of Worker Safety within the Voluntary Work Program**

27. The financial necessity for privately run ICE detention facilities to have available detainee labor has reportedly created perverse incentives to coerce detainees into the VWP.

28. Professor Stevens and the Deportation Research Clinic have conducted field interviews of current and former private prison detainees who participate in the VWP.

29. Through these interviews, they have learned that many civil immigration detainees feel coerced into participating in the program, in apparent violation of the U.S. Constitution's Thirteenth Amendment. *See, e.g., Wong Wing v. U.S.* 163 U.S. 228 (1896).

30. A common refrain among VWP participants is that the detention facility will intentionally skimp on providing food and hygiene items, forcing detainees to use commissary funds to buy these necessities, or to work for no payments in exchange for extra milk and chicken.

31. Almost all detainees Professor Stevens has interviewed have reported the combination of a need to buy basic items and the lack of available commissary funds as the primary reason for working in the VWP.

32. In addition to the coercive forces at work that channel detainees into the VWP, detainees have reported to Professor Stevens unsafe working conditions and no reporting mechanisms, calling into question the program's legality under the Occupational Safety and Health Act and other labor laws.

33. For example, a detainee at a CCA detention facility in Houston who complained repeatedly that gloves he was given to clean floors were also being used to serve food was terminated and transferred to a different facility.

34. Another detainee, later released because of his status as a U.S. Citizen, sustained a permanent back injury from the heavy buckets of water he was required to carry for his job mopping floors, rendering him unable to return to his job as a construction worker upon his release.

35. Still another detainee reported being threatened with termination from the VWP and being punished with having to clean latrines after he was too ill to report for a shift.

36. Other detainees have reported that refusal to follow arbitrary orders or the inability to work due to illness would result in threats of solitary confinement by guards.

37. VWP participants consistently complain about futility of the grievance process, and the punitive responses to workers who raise health and safety concerns.

38. The threat of solitary confinement or other forms of punishment for work-related disagreements or complaints has reportedly been used against detainees who participate in the VWP.

**PLAINTIFF'S FOIA REQUESTS**

39. Professor Stevens has spent the past three years attempting to learn as much as possible and inform the public about the Voluntary Work Program. A primary tool in this effort has been the Freedom of Information Act.

40. ICE has engaged in a pattern of obstruction in response to these requests by failing to timely and adequately search and disclose all agency records responsive to no less than five of her FOIA requests regarding the VWP.

**A. Agency Records of ICE Performance Requirements Summaries**

41. On September 20, 2013, Professor Stevens submitted a FOIA request by email to ICE requesting the following:

> Performance Requirements Summaries produced for the most recent Requests for Procurement or other instruments for contract negotiation providing details of performance requirements per federal procurement laws, regulations, and rules issued from ICE to potential bidders for contracts to house, feed, and guard detainees in ICE custody at the following detention facilities:
>
> 1) Florence SPC (AZ)
> 2) El Paso SPC [TX]
> 3) Krome SPC (FL)
> 4) El Centro SPC [CA]
> 5) Stewart CDF (GA)
> 6) Houston CDF (TX)
> 7) Joe Curley Detention Center (TX)
> 8) Elizabeth CDF (NJ)
> 9) Eloy CDF (AZ)
> 10) Tri-County Jail (IL)

42. ICE acknowledged receipt of Professor Stevens' request on October 25, 2013 by letter dated October 29, 2013, and assigned this request tracking number 2014FOIA1716.

43. Professor Stevens has received no response to this request in the seven months that have elapsed since she made it.

**B. Agency Records of Facility Staffing Plans Under an ICE "Deliverables" Requirement**

44. On September 22, 2013, Professor Stevens submitted a FOIA request by email to ICE requesting:

> the most recent 'Staffing Plans' submitted by the contractor per a 'deliverables' requirement to the Contracting Officer(s) for the El Centro SPC, CA, Florence SPC, Houston (CDF), TX ICE facilities.

45. ICE acknowledged receipt of Professor Stevens' request by letter dated October 17, 2013, and assigned this request tracking number 2014FOIA802.

46. Professor Stevens has received no response to this request in the seven months that have elapsed since she made it.

**C. Agency Records of Detainee Grievance Records – CCA Stewart Detention Facility**

47. On September 27, 2012, Professor Stevens submitted a FOIA request by email to ICE requesting:

> Copies of all grievances submitted by detainees held in the Stewart Detention Facility since January 1, 2008. This includes grievances against ICE, EOIR, or CCA and responded to by either ICE, the EOIR, or CCA.

48. ICE never provided written acknowledgement that it received this request.

49. However, Professor Stevens was able to obtain ICE FOIA request tracking number 2013FOIA445 by calling the ICE FOIA office.

50. Professor Stevens has received no response to this request in the nineteen months since she made it.

**D. Agency Records of Detainee Grievance Records – CCA Eloy Detention Facility**

51. On September 27, 2012, Professor Stevens submitted a FOIA request by email to ICE requesting:

> Copies of all grievances submitted by detainees held in the Eloy Detention Center since January 1, 2008. This includes grievances against ICE, EOIR, or CCA and responded to by either ICE, the EOIR, or CCA.

52. ICE never provided written acknowledgement that it received this request, and the agency has not assigned this request a tracking number, notwithstanding Professor Stevens attempts to obtain one.

53. Professor Stevens has received no response to this request in the over nineteen months since she made it.

**E. Agency Records of Documentation and Analysis for the Volunteer Work Program**

54. On August 24, 2013, Professor Stevens submitted a FOIA request by email to ICE requesting:

> 1) ICE generated, received, or maintained requests, memoranda, and analysis used for budgeting and contractual allocations for individual private contra[c]tors and employees for Detainee Volunteer Wages, as designated, for instance, in the attached supplemental contract at p. 3 of the pdf, item 004, "funding in support of CLIN 1005, Detainee Volunteer Wages."
>
> To clarify, ICE demonstrably allocates funds to detention centers to disburse Detainee Volunteer Wages; I am requesting all underlying documentation and analysis that informs the amounts set for these allocations for each ICE detention facility.
>
> I am requesting these documents for all ICE ERO contracted facilities from January 1, 2003 to the present.
>
> This includes but is not limited to:
>
> - e-mail, faxes, notes, memoranda, reports from ICE or private companies to the ICE officials handling Immigration and Customs Enforce[ment] budgetary decisions for Detainee Volunteer Wages.

9

Please include as well *the underlying Houston CCA contract that includes the CLIN 1005 referenced in the supplemental contract* quoted above at p. 3 004 (and attached).

I am also requesting:

2) all intra- inter-agency analysis of the ICE Detainee Volunteer Work Program in all media maintained by any component of ICE, including but not limited to grievances, litigation, public relations, and Congressional correspondence from January 1, 2003 to present

\*\*\*

3) Finally, I am requesting the total amount disbursed by ICE for Detainee Volunteer Wages for each year since January 1, 2003 to the amount budgeted for 2014.

55. Professor Stevens never received a written response from ICE acknowledging receipt of her request.

56. However, Professor Stevens was able to obtain ICE tracking number 2013FOIA32547 by calling ICE's FOIA office.

57. In the nine months since Professor Stevens submitted her request, ICE has provided no response.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

58. DHS-ICE has failed to comply with the time limits set forth in 5 U.S.C. § 552(a)(6)(A) or extend those time limit provisions pursuant to 5 U.S.C. § 552(a)(6)(B) with respect to all five FOIA requests made by Professor Stevens. As such, she has constructively exhausted all administrative remedies.

### CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION:**
**Violation of the FOIA**
**Failure to Adequately Search for and Disclose Agency Records**
**Responsive to Request No. 2014FOIA1716**

10

59. All previous paragraphs are incorporated as though fully set forth herein.

60. Plaintiff has a legal right under the FOIA to obtain agency records requested from Defendant DHS-ICE in connection with Request No. 2014FOIA1716, and no legal basis exists for Defendant's failure to adequately search for and promptly make available the requested records.

61. Defendant's failure to make reasonable efforts to search for responsive records and wrongful withholding of agency records sought in connection with Request No. 2014FOIA1716 violates the FOIA, 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(C), and 552(a)(6)(A), as well as DHS and ICE regulations promulgated thereunder.

**SECOND CAUSE OF ACTION:**
**Violation of the FOIA**
**Failure to Adequately Search for and Disclose Agency Records**
**Responsive to Request No. 2014FOIA802**

62. All previous paragraphs are incorporated as though fully set forth herein.

63. Plaintiff has a legal right under the FOIA to obtain agency records requested from Defendant DHS-ICE in connection with Request No. 2014FOIA802, and no legal basis exists for Defendant's failure to adequately search for and promptly make available the requested records.

64. Defendant's failure to make reasonable efforts to search for responsive records and wrongful withholding of agency records sought in connection with Request No. 2014FOIA802 violates the FOIA, 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(C), and 552(a)(6)(A), as well as DHS and ICE regulations promulgated thereunder.

**THIRD CAUSE OF ACTION:**
**Violation of the FOIA**
**Failure to Adequately Search for and Disclose Agency Records**
**Responsive to Request No. 2013FOIA445**

65. All previous paragraphs are incorporated as though fully set forth herein.

66. Plaintiff has a legal right under the FOIA to obtain agency records requested from Defendant DHS-ICE in connection with Request No. 2013FOIA445, and no legal basis exists for Defendant's failure to adequately search for and promptly make available the requested records.

67. Defendant's failure to make reasonable efforts to search for responsive records and wrongful withholding of agency records sought in connection with Request No. 2013FOIA445 violates the FOIA, 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(C), and 552(a)(6)(A), as well as DHS and ICE regulations promulgated thereunder.

**FOURTH CAUSE OF ACTION:**
**Violation of the FOIA**
**Failure to Adequately Search for and Disclose Agency Records**
**Responsive to Plaintiff's Sept. 27, 2012 Eloy Grievances Request**

68. All previous paragraphs are incorporated as though fully set forth herein.

69. Plaintiff has a legal right under the FOIA to obtain agency records requested from Defendant DHS-ICE in connection with her September 27, 2012 request for records related to grievances at the Eloy Detention Center, and no legal basis exists for Defendant's failure to adequately search for and promptly make available the requested records.

70. Defendant's failure to make reasonable efforts to search for responsive records and wrongful withholding of agency records sought in her September 27, 2012 request violates the FOIA, 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(C), and 552(a)(6)(A), as well as DHS and ICE regulations promulgated thereunder.

**FIFTH CAUSE OF ACTION:**
**Violation of the FOIA**
**Failure to Adequately Search for and Disclose Agency Records**
**Responsive to Request No. 2013FOIA32547**

71. All previous paragraphs are incorporated as though fully set forth herein.

72. Plaintiff has a legal right under the FOIA to obtain agency records requested from Defendant DHS-ICE in connection with Request No. 2013FOIA32547, and no legal basis exists for Defendant's failure to adequately search for and promptly make available the requested records.

73. Defendant's failure to make reasonable efforts to search for responsive records and wrongful withholding of agency records sought in connection with Request No. 2013FOIA32547 violates the FOIA, 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(C), and 552(a)(6)(A), as well as DHS and ICE regulations promulgated thereunder.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment entered in her favor and against Defendant, and that:

A. Defendant and any of Defendant's agents or other persons, departments, or components acting for, with, by, through, or under them be ordered to conduct a reasonable search for records responsive to Plaintiff's requests under the FOIA;

B. Defendant and any of Defendant's agents or other persons, departments, or components acting for, with, by, through, or under them be enjoined and restrained from continuing to withholding information relevant to Plaintiff's requests under the FOIA;

C. the Court declare that the requested records are not exempt from disclosure under the FOIA and order Defendant to disclose the requested records in their entirety and make copies available to the Plaintiff;

D. the Court enter a judgment awarding Plaintiff reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

E. the Court award all other relief to Plaintiff that it deems just, equitable, and proper.

Dated: May 6, 2014 Respectfully submitted,

/s/ R. Andrew Free_____
**R. ANDREW FREE, No. 30513**
217 Second Avenue North
Nashville, TN 37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
Andrew@ImmigrantCivilRights.com
*Attorney for the Plaintiff*