UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 3305 |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | Judge Leinenweber |
| SECURITY – IMMIGRATION AND | ) | |
| CUSTOMS ENFORCEMENT | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER TO COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

The United States, by its attorney, Zachary T. Fardon, United States Attorney for the

Northern District of Illinois, for its answer to the complaint, states as follows:

### First Defense

Plaintiff's claims are barred to the extent that she failed to exhaust her administrative

remedies.

### Second Defense

Answering the specific allegations of the complaint, the defendants admit, deny, or

otherwise aver as follows:

1.      **Complaint:** This is an action under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, seeking wrongfully withheld agency records relating to the so-called Voluntary

Work Program for civil detainees at U.S. Immigration and Customs Enforcement (ICE) detention

facilities.

**Response:** Admit that this is an action brought pursuant to the FOIA, and admit that the complaint alleges that ICE wrongfully withheld agency records, including records related to the voluntary work program. Deny the remainder of the allegations contained in paragraph 1.

2. **Complaint:** Professor Stevens seeks declaratory, injunctive, and all other appropriate relief with respect to the unlawful withholding of these agency records by the United States Department of Homeland Security ("DHS") and its agency component ICE.

**Response:** Admit that plaintiff Stevens seeks declaratory, injunctive, and other appropriate relief, and admit that she alleges that ICE improperly withheld agency records. Deny that Stevens is entitled to the relief she requests.

## JURISDICTION AND VENUE

3. **Complaint:** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Jurisdiction lies to grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.

**Response:** Admit.

4. **Complaint:** Venue is proper under 5 U.S.C. § 552(a)(4)(B) because Professor Stevens resides within this District.

**Response:** Upon information and belief, admit.

## PARTIES

5. **Complaint:** Plaintiff Jacqueline Stevens is a Professor of Political Science and the Director of the Deportation Research Clinic at Northwestern University. Her office and principal place of residence is in Cook County, Illinois.

**Response:** Upon information and belief, admit.

6. **Complaint:** Defendant U.S. Department of Homeland Security- Immigration and Customs Enforcement is an executive agency component of the United States government and is principally responsible for enforcing federal immigration laws. ICE has possession and control over all agency records Professor Stevens seeks. DHS and ICE are agencies within the meaning of 5 U.S.C. § 552(f)(l).

**Response:** Admit that the United States Department of Homeland Security, Immigration and Customs enforcement is an executive agency component of the United States government, and admit that it is responsible for enforcing immigration laws. Admit that DHS and ICE are agencies within the meaning of 5 U.S.C. § 552(f)(1). As ICE has not yet had the opportunity to search for records responsible to plaintiff's FOIA request, ICE lacks the knowledge or information sufficient to form a belief as to whether it is in possession and control over all agency records that Stevens seeks.

## NATURE OF THE ACTION

### A. The Detention Bed Quota and Its Costs

7. **Complaint:** Congress requires DHS to "maintain a level of not less than 34,000 detention beds" per night to incarcerate people for civil immigration violations. Department of Homeland Security Appropriations Act of 2014, H.R. 2217, 113th Cong. § 544 (2013).

**Response:** *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

8. **Complaint:** To meet this congressionally imposed detention bed quota, DHS contracts with private prison companies that operate civil immigration jails for profit. These private companies include the Corrections Corporation of America ("CCA") and the GEO Group.

**Response:** *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

9.     **Complaint:**  The detention bed quota currently costs taxpayers approximately $120 per detainee per day, or roughly $1.43 billion per year.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

10.     **Complaint:**   By contrast, alternatives to administrative detention, such as electronic monitoring and intensive supervision, cost an average of about $6 per individual per day.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

11.     **Complaint:**  These alternatives to . detention have produced 94% appearance rates at immigration court hearings, while costing taxpayers an average of 95% less per individual as compared with detention.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

## B.  Hiding the True Cost of the Bed Quota through the "Voluntary" Work Program

12.     **Complaint:**  The true cost of the detention bed quota to American taxpayers could be over $400 million higher per year, were it not for ICE's "Voluntary Work Program" ("VWP").

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

13.     **Complaint:**  Civil immigration detainees work in the VWP alongside private prison employees who are paid at rates established by the Service Contract Act, 41 U.S.C. §§ 351, et seq., in food service, barbershop, janitorial, laundry, maintenance, and other jobs.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

14.     **Complaint:**  ICE and its private prison contractors pay these civil immigration detainees $1 per day for their work. The $1 per day pay rate dates back to the 1940s, when Congress first created the VWP to compensate detainees in internment and POW camps. In

1943, the pay rate was 80 cents per day, while the cost to the government of detaining each person was $1.

**Response:** *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

15. **Complaint:** By contrast, a worker making minimum wage for doing the same tasks today would be paid between $58 and $80 per day, depending on the state. And a worker paid under the Service Contract Act, required for federal contractors, would be paid $89.60 to $263.44 per day, depending on the location and work performed.

**Response:** *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

16. **Complaint:** The VWP relies on approximately 4.2 million shifts per year of work performed by ICE detainees to control costs at privately run civil immigration detention facilities.

**Response:** *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

17. **Complaint:** Through her research, Professor Stevens has discovered that the contracting documents between private prison companies and ICE explicitly rely on the availability of a "detainee workforce" to staff ICE facilities and comply with Congress's bed quota.

**Response:** *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

18. **Complaint:** Some of these documents even provide specific ratios of private prison employees to detainee laborers that will be necessary to fulfill federal contract requirements. These contracting documents include lengthy questions and answers between the private prison firms and ICE about the scope of detainee labor for the purpose of informing contractor bids.

**Response:** *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

19.     **Complaint:**  At the CCA facility in Lumpkin, Georgia, detainees are paid $3 per day for certain jobs, including work as barbers. On information and belief, this is in response to detainee work shortages, and indicates the reliance on this program for work that is central to the daily operations of the private prisons.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

20.     **Complaint:**  According to CCA data from its 2012 Annual Report filed with the SEC, Professor Stevens estimates that CCA made profits of $32 million from its ICE detention contracts. Using conservative assumptions and specific data on the Average Daily Population in CCA ICE facilities for 2012, she estimates that through relying on $1 per day detainee labor, CCA avoided $30 million per year in operations costs with detainee labor in the VWP.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

## C. Paying for the Voluntary Work Program

21.     **Complaint:**  Federal law explicitly permits paying immigration detainees "allowances" for work performed. 8 U.S.C. § 1555(d).

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

22.     **Complaint:**  Federal law also explicitly requires Congress to set the rates of such payments through the appropriations process. *Id*. § 1555.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

23.     **Complaint:**  Congress authorized the Immigration and Naturalization Service ("INS") to pay immigration detainees $1 per day under 8 USC§ 1555(d) each year between 1949 and 1978.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

24.     **Complaint:**  But in 1979, the INS deleted the VWP from the budget it submitted to Congress and the item vanished from the agency's budget in the appropriations Act. *Cf.* Public Law 95-431, 92 Stat. 1027 (Oct. 10, 1978)("For ... payment of allowances (at a rate not in excess of $1 per day) to aliens, while held in custody under the immigration laws, for work performed) with Public Law 96-68 (1979)(omitting any appropriation for allowances to immigration detainees).

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

25.     **Complaint:**  Because Congress has not appropriated ICE funds to pay for the VWP, the agency pays for detainee work using "Imprest Funds" from the Department of the Treasury, according to documents released to Professor Stevens in response to a previous FOIA request.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

26.     **Complaint:**  Though the Treasury Department promulgated strict rules in 2001 limiting federal agencies' use of un-appropriated or off-budget, petty cash Imprest Funds, Professor Stevens' research shows that ICE and the private prison contractors used Imprest Funds in 2010 to pay civil immigration detainees who participate in the VWP, in apparent violation of Treasury Department rules and the separation of powers.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

**D.  Coercion and Lack of Worker Safety within the Voluntary Work Program**

27.     **Complaint:**  The financial necessity for privately run ICE detention facilities to have available detainee labor has reportedly created perverse incentives to coerce detainees into the VWP.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

28. **Complaint:** Professor Stevens and the Deportation Research Clinic have conducted field interviews of current and former private prison detainees who participate in the VWP.

**Response:** *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

29. **Complaint:** Through these interviews, they have learned that many civil immigration detainees feel coerced into participating in the program, in apparent violation of the U.S. Constitution's Thirteenth Amendment. *See, e.g., Wong Wing v. U.S.* 163 U.S. 228 (1896).

**Response:** *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

30. **Complaint:** A common refrain among VWP participants is that the detention facility will intentionally skimp on providing food and hygiene items, forcing detainees to use commissary funds to buy these necessities, or to work for no payments in exchange for extra milk and chicken.

**Response:** *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

31. **Complaint:** Almost all detainees Professor Stevens has interviewed have reported the combination of a need to buy basic items and the lack of available commissary funds as the primary reason for working in the VWP.

**Response:** *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

32. **Complaint:** In addition to the coercive forces at work that channel detainees into the VWP, detainees have reported to Professor Stevens unsafe working conditions and no reporting mechanisms, calling into question the program's legality under the Occupational Safety and Health Act and other labor laws.

**Response:** *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

33.     **Complaint:**  For example, a detainee at a CCA detention facility in Houston who complained repeatedly that gloves he was given to clean floors were also being used to serve food was terminated and transferred to a different facility.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

34.     **Complaint:**  Another detainee, later released because of his status as a U.S. Citizen, sustained a permanent back injury from the heavy buckets of water he was required to carry for his job mopping floors, rendering him unable to return to his job as a construction worker upon his release.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

35.     **Complaint:**  Still another detainee reported being threatened with termination from the VWP and being punished with having to clean latrines after he was too ill to report for a shift.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

36.     **Complaint:**  Other detainees have reported that refusal to follow arbitrary orders or the inability to work due to illness would result in threats of solitary confinement by guards.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

37.     **Complaint:**  VWP participants consistently complain about futility of the grievance process, and the punitive responses to workers who raise health and safety concerns.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

38.     **Complaint:**  The threat of solitary confinement or other forms of punishment for work-related disagreements or complaints has reportedly been used against detainees who participate in the VWP.

**Response:**  *See* Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

**PLAINTIFF'S FOIA REQUESTS**

39.    **Complaint:**  Professor Stevens has spent the past three years attempting to learn as much as possible and inform the public about the Voluntary Work Program. A primary tool in this effort has been the Freedom of Information Act.

**Response:**  The defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 39.

40.    **Complaint:**  ICE has engaged in a pattern of obstruction in response to these requests by failing to timely and adequately search and disclose all agency records responsive to no less than five of her FOIA requests regarding the VWP.

**Response:**  Deny.

**A.  Agency Records of ICE Performance Requirements Summaries**

41.    **Complaint:**   On September 20, 2013, Professor Stevens submitted a FOIA request by email to ICE requesting the following:

> Performance Requirements Summaries produced for the most recent Requests for Procurement or other instruments for contract negotiation providing details of performance requirements per federal procurement laws, regulations, and rules issued from ICE to potential bidders for contracts to house, feed, and guard detainees in ICE custody at the following detention facilities:
>
> 1) Florence SPC (AZ)
> 2) El Paso SPC [TX]
> 3) Krome SPC (FL)
> 4) El Centro SPC [CA]
> 5) Stewart CDF (GA)
> 6) Houston CDF (TX)
> 7) Joe Curley Detention Center (TX)
> 8) Elizabeth CDF (NJ)
> 9) Eloy CDF (AZ)
> 10) Tri-County Jail (IL)

**Response:**  Admit.

42.     **Complaint:**  ICE acknowledged receipt of Professor Stevens' request on October 25, 2013 by letter dated October 29, 2013, and assigned this request tracking number 2014FOIA1716.

**Response:**  Admit.

43.     **Complaint:**  Professor Stevens has received no response to this request in the seven months that have elapsed since she made it.

**Response:**  Admit.

## B. Agency Records of Facility Staffing Plans Under an ICE "Deliverables" Requirement

44.     **Complaint:**  On September 22, 2013, Professor Stevens submitted a FOIA request by email to ICE requesting:

> the most recent 'Staffing Plans' submitted by the contractor per a 'deliverables' requirement to the Contracting Officer(s) for the El Centro SPC, CA, Florence SPC, Houston (CDF), TX ICE facilities.

**Response:**  Admit.

45.     **Complaint:**  ICE acknowledged receipt of Professor Stevens' request by letter dated October 17, 2013, and assigned this request tracking number 2014FOIA802.

**Response:**  Admit.

46.     **Complaint:**  Professor Stevens has received no response to this request in the seven months that have elapsed since she made it.

**Response:**  Admit.

## C. Agency Records of Detainee Grievance Records- CCA Stewart Detention Facility

47.     **Complaint:**  On September 27, 2012, Professor Stevens submitted a FOIA request by email to ICE requesting:

Copies of all grievances submitted by detainees held in the Stewart Detention Facility since January 1, 2008. This includes grievances against ICE, EOIR, or CCA and responded to by either ICE, the EOIR, or CCA.

**Response:** Admit.

48. **Complaint:** ICE never provided written acknowledgement that it received this request.

**Response:** Admit.

49. **Complaint:** However, Professor Stevens was able to obtain ICE FOIA request tracking number 2013FOIA445 by calling the ICE FOIA office.

**Response:** The defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49.

50. **Complaint:** Professor Stevens has received no response to this request in the nineteen months since she made it.

**Response:** Deny. ICE further avers that it attempted to contact plaintiff on July 17, 2013, to discuss potentially narrowing the scope of her FOIA request, but was unable to reach her. ICE left a message, but has no record of receiving a return call.

**D. Agency Records of Detainee Grievance Records - CCA Eloy Detention Facility**

51. **Complaint:** On September 27, 2012, Professor Stevens submitted a FOIA request by email to ICE requesting:

Copies of all grievances submitted by detainees held in the Eloy Detention Center since January 1, 2008. This includes grievances against ICE, EOIR, or CCA and responded to by either ICE, the EOIR, or CCA.

**Response:** Deny. ICE further avers that it has no record of having received this request.

52.     **Complaint:**  ICE never provided written acknowledgement that it received this request, and the agency has not assigned this request a tracking number, notwithstanding Professor Stevens attempts to obtain one.

**Response:**  Admit that ICE never provided written acknowledgment of this request, or assigned it a tracking number, and further avers that it has no record of receiving this request.

53.     **Complaint:**  Professor Stevens has received no response to this request in the over nineteen months since she made it.

**Response:**  Admit that ICE has not responded to this request, but further aver that ICE has no record of having received this request.

**E.  Agency Records of Documentation and Analysis for the Volunteer Work Program**

54.     **Complaint:**  On August 24, 2013, Professor Stevens submitted a FOIA request by email to ICE requesting:

> 1)     ICE generated, received, or maintained requests, memoranda, and analysis used for budgeting and contractual allocations for individual private contra[c]tors and employees for Detainee Volunteer Wages, as designated, for instance, in the attached supplemental contract at p. 3 of the pdf, item 004, "funding in support of CLIN 1005, Detainee Volunteer Wages."

> To clarify, ICE demonstrably allocates funds to detention centers to disburse Detainee Volunteer Wages; I am requesting all underlying documentation and analysis that informs the amounts set for these allocations for each ICE detention facility.
> I am requesting these documents for all ICE ERO contracted facilities from January 1, 2003 to the present. This includes but is not limited to:

> - e-mail, faxes, notes, memoranda, reports from ICE or private companies to the ICE officials handling Immigration and Customs Enforce[ment] budgetary decisions for Detainee Volunteer Wages.

> Please include as well *the underlying Houston CCA contract that includes the CLIN 1005 referenced in the supplemental contract* quoted above at p. 3 004 (and attached).

> I am also requesting:

2)      all intra- inter-agency analysis of the ICE Detainee Volunteer Work Program in all media maintained by any component of ICE, including but not limited to grievances, litigation, public relations, and Congressional correspondence from January 1, 2003 to present

***

3)      Finally, I am requesting the total amount disbursed by ICE for Detainee Volunteer Wages for each year since January 1, 2003 to the amount budgeted for 2014.

**Response:** Admit.

55.     **Complaint:** Professor Stevens never received a written response from ICE acknowledging receipt of her request.

**Response:** Admit.

56.     **Complaint:** However, Professor Stevens was able to obtain ICE tracking number 2013FOIA32547 by calling ICE's FOIA office.

**Response:** Admit that ICE assigned this request tracking number 2013FOIA32547, but the defendant lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in paragraph 56.

57.     **Complaint:** In the nine months since Professor Stevens submitted her request, ICE has provided no response.

**Response:** Admit.

<u>**EXHAUSTION OF ADMINISTRATIVE REMEDIES**</u>

58.     **Complaint:** DHS-ICE has failed to comply with the time limits set forth in 5 U.S.C. § 552(a)(6)(A) or extend those time limit provisions pursuant to 5 U.S.C. § 552(a)(6)(B) with respect to all five FOIA requests made by Professor Stevens. As such, she has constructively exhausted all administrative remedies.

**Response:** Admit that with regard to the above-referenced FOIA requests that were received and tracked by ICE, that ICE has not yet had the time to process Stevens' FOIA request,

and it has not yet made determinations regarding whether it has responsive, non-exempt records that can be released. Admit that for the requests that were received by ICE, Stevens has constructively exhausted her administrative remedies. However, deny that administrative remedies have been exhausted for any request for which ICE has no record of having received the request.

### CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:
**Violation of the .FOIA**
**Failure to Adequately Search for and Disclose Agency Records**
**Responsive to Request No. 2014FOIA1716**

59. **Complaint:** All previous paragraphs are incorporated as though fully set forth herein.

**Response:** The defendant incorporates its responses to paragraphs 1-58 as though set forth in full here.

60. **Complaint:** Plaintiff has a legal right under the FOIA to obtain agency records requested from Defendant DHS-ICE in connection with Request No. 2014FOIA1716, and no legal basis exists for Defendant's failure to adequately search for and promptly make available the requested records.

**Response:** Admit that plaintiff has a legal right to obtain responsive, non-exempt agency records that are located after the agency has conducted a good-faith search for records responsive to her request. Deny the remainder of paragraph 60.

61. **Complaint:** Defendant's failure to make reasonable efforts to search for responsive records and wrongful withholding of agency records sought in connection with Request No. 2014FOIA1716 violates the FOIA, 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(C), and 552(a)(6)(A), as well as DHS and ICE regulations promulgated thereunder.

**Response:** Deny.

## SECOND CAUSE OF ACTION:

### Violation of the FOIA
### Failure to Adequately Search for and Disclose Agency Records
### Responsive to Request No. 2014FOIA802

62.    **Complaint:**  All previous paragraphs are incorporated as though fully set forth herein.

**Response:**  The defendant incorporates its responses to paragraphs 1-62 as if set forth fully here.

63.    **Complaint:**  Plaintiff has a legal right under the FOIA to obtain agency records requested from Defendant DHS-ICE in connection with Request No. 2014FOIA802, and no legal basis exists for Defendant's failure to adequately search for and promptly make available the requested records.

**Response:**  Admit that plaintiff has a legal right to obtain responsive, non-exempt agency records that are located after the agency has conducted a good-faith search for records responsive to her request.  Deny the remainder of paragraph 63.

64.    **Complaint:**  Defendant's failure to make reasonable efforts to search for responsive records and wrongful withholding of agency records sought in connection with Request No. 2014FOIA802 violates the FOIA, 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(C), and 552(a)(6)(A), as well as DHS and ICE regulations promulgated thereunder.

**Response:** Deny.

## THIRD CAUSE OF ACTION:

### Violation of the FOIA
### Failure to Adequately Search for and Disclose Agency Records
### Responsive to Request No. 2013FOIA445

16

65. **Complaint:** All previous paragraphs are incorporated as though fully set forth herein.

**Response:** The defendant incorporates its responses to paragraphs 1-64 as if set forth fully here.

66. **Complaint:** Plaintiff has a legal right under the FOIA to obtain agency records requested from Defendant DHS-ICE in connection with Request No. 2013FOIA445, and no legal basis exists for Defendant's failure to adequately search for and promptly make available the requested records.

**Response:** Admit that plaintiff has a legal right to obtain responsive, non-exempt agency records that are located after the agency has conducted a good-faith search for records responsive to her request. Deny the remainder of paragraph 66.

67. **Complaint:** Defendant's failure to make reasonable efforts to search for responsive records and wrongful withholding of agency records sought in connection with Request No. 2013FOIA445 violates the FOIA, 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(C), and 552(a)(6)(A), as well as DHS and ICE regulations promulgated thereunder.

**Response:** Deny.

## FOURTH CAUSE OF ACTION:

### Violation of the FOIA
**Failure to Adequately Search for and Disclose Agency Records
Responsive to Plaintiff's Sept. 27, 2012 Eloy Grievances Request**

68. **Complaint:** All previous paragraphs are incorporated as though fully set forth herein.

**Response:** The defendant incorporates its responses to paragraphs 1-67 as if set forth fully here.

69. **Complaint:** Plaintiff has a legal right under the FOIA to obtain agency records requested from Defendant DHS-ICE in connection with her September 27, 2012 request for records related to grievances at the Eloy Detention Center, and no legal basis exists for Defendant's failure to adequately search for and promptly make available the requested records.

**Response:** Deny. ICE has no record of receiving this request.

70. **Complaint:** Defendant's failure to make reasonable efforts to search for responsive records and wrongful withholding of agency records sought in her September 27, 2012 request violates the FOIA, 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(C), and 552(a)(6)(A), as well as DHS and ICE regulations promulgated thereunder.

**Response:** Deny.

## <u>FIFTH CAUSE OF ACTION:</u>

### <u>Violation of the FOIA</u>
**Failure to Adequately Search for and Disclose Agency Records**
**Responsive to Request No. 2013FOIA32547**

71. **Complaint:** All previous paragraphs are incorporated as though fully set forth herein.

**Response:** The defendant incorporates its responses to paragraphs 1-70 as if set forth fully here.

72. **Complaint:** Plaintiff has a legal right under the FOIA to obtain agency records requested from Defendant DHS-ICE in connection with Request No. 2013FOIA32547, and no legal basis exists for Defendant's failure to adequately search for and promptly make available the requested records.

**Response:**  Admit that plaintiff has a legal right to obtain responsive, non-exempt agency records that are located after the agency has conducted a good-faith search for records responsive to her request.  Deny the remainder of paragraph 72.

73.    **Complaint:**    Defendant's failure to make reasonable efforts to search for responsive records and wrongful withholding of agency records sought in connection with Request No. 2013FOIA32547 violates the FOIA, 5 U.S.C. §§ 552(a)(3)(A), 552(a)(3)(C), and 552(a)(6)(A), as well as DHS and ICE regulations promulgated thereunder.

**Response:**  Deny.

WHEREFORE, the defendant, United States of America, request that the case be dismissed with costs and that the court award such further relief as may be appropriate.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By: s/ Abigail L. Peluso
    ABIGAIL L. PELUSO
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5342
    abigail.peluso@usdoj.gov