# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14 C 3305 |
| ) | |
| UNITED STATES DEPARTMENT OF ) | Judge Leinenweber |
| HOMELAND SECURITY, IMMIGRATION ) | |
| AND CUSTOMS ENFORCEMENT, ) | |
| ) | |
| Defendant. ) | |

**DECLARATION OF FERNANDO PINEIRO**

**I.  INTRODUCTION**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.  I am the Deputy FOIA Officer of the Freedom of Information Act Office (ICE FOIA Office) at U.S. Immigration and Customs Enforcement (ICE). I have held this position since December 29, 2013. Prior to this position, I was the FOIA Officer for the office for Civil Rights and Civil Liberties at the Department of Homeland Security (DHS) for 3 years. The ICE FOIA Office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2.  The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE.

3.  As the Deputy FOIA Officer of the ICE FOIA Office, my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office. I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE. In connection with

1

my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of FOIA and the Privacy Act. In that respect, I am familiar with ICE's processing of the FOIA requests that plaintiff Jacqueline Stevens submitted and which are the subject of the present litigation.

4. I make this declaration in support of ICE's Brief in Opposition to the Plaintiff's Motion for Partial Summary Judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

## II. ICE'S STANDARD PROCEDURES FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

5. Each program office within ICE has a designated point of contact ("POC") who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of their particular program office. When the ICE FOIA Office receives a FOIA request, its first step is to identify which program offices within ICE are likely to possess records responsive to that request and to initiate searches within those program offices. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request along with any case-specific instructions that may have been provided and forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are most likely to have responsive records. Per the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both

2

paper files and electronic files, which, in their judgment and based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness.

6. ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, or USB storage devices. Additionally, all ICE employees have access to email. ICE uses the Microsoft Outlook email system.

7. The determination as to how to conduct searches in response to a particular FOIA tasking is left solely to the discretion of the individual employee conducting the search.

### III. PROCEDURAL HISTORY OF PLAINTIFF'S 2013FOIA32547 FOIA REQUEST AND THE INSTANT LITIGATION

8. On August 24, 2013, plaintiff Jacqueline Stevens submitted the following FOIA request via email to the ICE FOIA mailbox.

> (1) ICE generated, received, or maintained requests, memoranda, and analysis used for budgeting and contractual allocations for individual private contractors(sic) and employees for Detainee Volunteer wages, as designated, for instance, in the attached supplemental contract at p. 3 of the pdf, item 004, 'funding in support of CLIN 1005, Detainee Volunteer Wages.'
> To clarify, ICE demonstrably allocates funds to detention centers to disburse Detainee Volunteer Wages; I am requesting all underlying documentation and analysis that informs the amounts set for these allocations for each ICE

3

detention facility. I am requesting these documents for all ICE ERO contracted facilities from January 1, 2003 to the present.
This includes but is not limited to: -email, faxes, notes, memoranda, reports from ICE or private companies to the ICE officials handling Immigration and Customs Enforcement(sic) budgetary decisions for Detainee Volunteer Wages.
Please include as well *the underlying Houston CCA contract that includes the CLIN1005 referenced in the supplemental contract* quoted above a p. 3 004 (and attached).

I am also requesting:
(2) All intra-inter-agency analysis of the ICE Detainee Volunteer Work Program in all media maintained by any component of ICE, including but not limited to grievances, litigation, public relations, and Congressional correspondence from January 1, 2003 to present
Please consult for responsive documents agents in Enforcement and Removal Operations for documentation of grievances related to this program and the ICE Office of the Principal Legal Advisor.

(3) Finally, I am requesting the total amount disbursed by ICE for Detainee Volunteer Wages for each year since January 1, 2003 to the amount budgeted for 2014.

9. By letter dated September 12, 2013, the ICE FOIA Office acknowledged receipt of Plaintiff's FOIA request via letter and assigned the request FOIA tracking number 2013FOIA32547.

10. On May 6, 2014, the plaintiff filed the Complaint in the current litigation.

11. Based on conversations with plaintiff's counsel after the filing of the Complaint, the agency was advised to prioritize the response to part 3 of the request—the total amount disbursed by ICE for Detainee Volunteer Wages for each year since January 1, 2003 to the amount budgeted for 2014.

**A true and complete copy of the July 30, 2014 email from plaintiff's counsel to the Assistant United States Attorney is attached to this declaration as Exhibit 1.**

12. In accordance with plaintiff's July 30, 2014 request, the information sought in part 3 of the request was tasked to the following program offices: the ICE Enforcement and

4

Removal Operations Office (ERO), Custody Management Unit; the ICE Office of Acquisition Management (OAQ); and the ICE Office of the Chief Financial Officer (CFO).

13. ICE ERO manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release. In addition, ERO repatriates aliens ordered removed from the United States to more than 170 countries around the world. Comprising seven headquarters divisions and twenty-four Field Offices, ERO consists of 7,621 employees and manages a budget of approximately $2.8 billion. Within ERO, the Custody Management Unit (CM) provides the policy and oversight for the administrative custody of detainees and is responsible for managing ICE's detention operations efficiently and effectively to provide for the safety, security, and care of aliens in ERO custody.

14. ICE OAQ is responsible for delivering quality acquisitions solutions in support of the ICE and DHS missions. The OAQ, in part, provides acquisition support to ICE Headquarters and the ICE Field Offices throughout the country for detention, along with ancillary services and supplies in support of the ICE mission to remove illegal aliens from the United States. OAQ also supports ERO in the planning, awarding, and administering of contracts for law enforcement and compliance requirements, including detention management compliance, fugitive operations, criminal alien program, removal management, and response coordination.

15. ICE CFO is responsible for effectively managing and controlling costs, determining the availability and efficient use of resources and services, and providing proactive, customer-oriented services to the ICE operational components.

16. Based on the totality of plaintiff's FOIA Request 2013FOIA32547, ICE interpreted part 3 of the request, which requested "the total amount disbursed by ICE for

Detainee Volunteer Wages for each year since January 1, 2003 to the amount budgeted for 2014," as seeking information regarding the total yearly figure paid by the agency for detainee wages earned while participating in a volunteer work program for each specified year. Further, given that part 1 of the request asked for "all underlying documentation and analysis" pertaining to detainee wage allocations, ICE did not construe part 3 of the request as also seeking the underlying records related to these total yearly figures.

17. After plaintiff was informed that the agency did not track the total amount of funds disbursed for detainee volunteer work program wages for fiscal years 2003-2014, the ICE FOIA Office tasked the following program offices in January 2015 with searches for parts 1 and 2 of plaintiff's FOIA Request 2013FOIA32547: Office of Detention Policy and Planning (ODPP); ERO, Law Enforcement Systems and Analysis (LESA); CFO; Office of Professional Responsibility (OPR), Office of Detention Oversight (ODO); OAQ; Office of Public Affairs (OPA); Office of Congressional Relations (OCR); and the Office of the Principal Legal Advisor (OPLA). The ICE FOIA Office was provided with a list of the above program offices following an agreement by the parties that the above program offices should be searched. ICE FOIA has received responses from OCFO, OPA, OPLA, OPR, OCR, ODPP and OAQ. Searches, however, are still ongoing within the office of ERO LESA and the OCFO. Ongoing searches are estimated to be completed in April 2015. Upon completion of searches, production will commence with releases expected to begin in May 2015. The productions will include, inter alia, the supporting documentation for the payment of detainee wages made directly by ICE (El Paso and Port Isabel SPCs) or the reimbursement of detainee wages by ICE to the service providers.

### IV. PROCEDURAL HISTORY OF PLAINTIFF'S 2014FOIA00802 FOIA REQUEST AND THE INSTANT LITIGATION

18. On September 22, 2013, plaintiff submitted a FOIA request via email to the ICE FOIA mailbox asking for "copies of the most recent 'Staffing Plans' submitted by the contractor per a 'deliverables' requirement to the Contracting Officer(s) for the *El Centro SPC*, CA, *Florence SPC*, Houston (CDF), TX ICE detention facilities."

19. By letter dated October 17, 2013, the ICE FOIA Office acknowledged receipt of Plaintiff's FOIA request and assigned the request FOIA tracking number 2014FOIA802.

20. Upon receiving plaintiff's FOIA request, consistent with the standard procedures described in Section II above, the ICE FOIA Office reviewed the FOIA request and determined that based on the subject matter of the FOIA request, OAQ and ERO were the two program offices that would likely possess responsive records, if any. Accordingly, on October 17, 2013, the ICE FOIA Office tasked these offices with conducting a search for potentially responsive records.

21. ERO and OAQ conducted searches and provided responsive documents to the ICE FOIA Office.

22. Prior to the filing of the Complaint in this litigation, the agency had not issued a final response letter nor did it assert the application of specific FOIA exemptions.

23. Initially, the agency believed that the staffing plans could not be provided pursuant to 41 U.S.C. § 4702 and therefore would be withheld in full per FOIA Exemption (b)(3).

24. While Plaintiff asserts that "ICE has previously released an un-redacted contractor-submitted staffing plan for the El Centro facility in full," ICE can neither confirm nor deny this fact inasmuch as plaintiff has failed to provide any information regarding when, where,

7

and to whom the El Centro staffing plan attached to her motion for partial summary judgment was produced.

25.     Upon further review and in consultation with the submitters regarding proprietary information contained within the staffing plans, ICE re-processed the records and released the non-exempt portion of the staffing plans for the Houston CDF, El Centro SPC, and Florence SPC facilities on March 27, 2015.

## V. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this __6__ day of April 2015.

Fernando Pineiro, Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009

8

# EXHIBIT 1

**Peluso, Abigail (USAILN)**

| | |
|---|---|
| **From:** | Andrew Free <andrew@immigrantcivilrights.com> |
| **Sent:** | Wednesday, July 30, 2014 9:55 AM |
| **To:** | Peluso, Abigail (USAILN) |
| **Subject:** | Stevens v. ICE, No. 1:14-cv-3305 |

Abbie:

Thanks for all of the updates this morning. Regarding 2013FOIA32547, I want to suggest that if the agency could prioritize responding to part 3) first, Prof. Stevens has indicated it'll be much easier to decide how to narrow the rest. So if OAM has access to those figures and wishes, as a matter of discretionary disclosure, to release them ASAP, I think we'll be much closer to agreement that would resolve the agency's scope concerns.

Regarding 2013FOIA 802, I believe I heard you say that the submitter notifications have already gone out. Is that right? Does that mean docs have already been identified? Will it be possible to put those docs into the monthly rolling productions?

Regarding Count 4, I'll send over a draft Stipulation of Dismissal under Rule 41(a)(1)(A)(ii) for your review, and we'll get that on file shortly.

Please let me know if there's anything else we need to discuss.

Best regards,

Andrew


R. Andrew Free
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
(615) 432-2642 (direct)
(615) 244-2202 (office)
(615) 244-4345 (fax)
Andrew@ImmigrantCivilRights.com

1