# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 14 C 3305 |
| | ) |
| UNITED STATES DEPARTMENT OF | ) Judge Leinenweber |
| HOMELAND SECURITY, IMMIGRATION | ) |
| AND CUSTOMS ENFORCEMENT, | ) |
| | ) |
| Defendant. | ) |

**DECLARATION OF ROGER KISSEL**

I. **INTRODUCTION**

I, Roger Kissel, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Chief of the U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO), Contract Management Unit (CMU). I have held this position since it was created in February 2015. Prior to this position, I was a Program Manager with the ERO Operations Support Division since September 2008, performing essentially the same functions that I currently perform as the Chief of CMU. The ICE ERO CMU office mailing address is 500 12th Street, S.W., Washington, D.C. 20536.

2. The ICE ERO CMU is responsible for providing contract management assistance to ERO Field and Program Offices and monitoring the financial performance of ERO contracts.

3. As the Chief of the ERO CMU, my official duties and responsibilities include the general management, oversight, and supervision of the Unit. I manage and supervise a staff of Program and Management Analysts, who report to me regarding ERO contract management issues and the financial performance of ERO contracts. In connection with my official duties, I

1

am familiar with ICE's procedures for the payment of detainee wages at detention facilities utilized by ICE where detainee volunteer wage payments are made by contractors.

4. I make this declaration in support of ICE's Brief in Opposition to the Plaintiff's Motion for Partial Summary Judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my duties.

## II. DESCRIPTION OF ICE DETENTION FACILITIES & PAYMENT OF DETAINEE WAGES

5. ICE utilizes three types of detention facilities in furtherance of its mission: (1) ICE Service Processing Centers (SPC); (2) ICE Contract Detention Facilities (CDF); and (3) jails/facilities used pursuant to Intergovernmental Service Agreements (IGSA) and Intergovernmental Agreements (IGA). There are over 200 detention facilities utilized by ICE, each falling within one of the above three categories, with the majority of the facilities being IGSAs. Not all detention facilities offer a volunteer work program to detainees, and ICE does not track how many detainees participate in a volunteer work program, as the day-to-day operations of a majority of the programs are handled by service providers.

6. There are currently five Service Processing Centers and seven Contract Detention Facilities that offer detainees the opportunity to participate in a volunteer work program. The SPCs are: Batavia SPC, El Paso SPC, Krome SPC, Florence SPC, and Port Isabel SPC. Until September 2014, there were six SPCs offering the program; however, in September 2014, the El Centro SPC was closed for use as a detention facility. The CDFs offering a volunteer work program are: Denver CDF, Houston, CDF, Broward CDF, Elizabeth CDF, Northwest Detention

Center CDF, South Texas Detention Center, and San Diego CDF. ICE does not track the IGSAs or IGAs that offer a volunteer work program.

7. With the exception of the El Paso SPC, Port Isabel SPC, and San Diego CDF, all detainee wage payments are made directly to the detainee by the service provider for the facilities listed in paragraph 6. The service providers subsequently invoice ICE on a monthly basis for reimbursement of those wage amounts. For the El Paso and Port Isabel SPCs, ICE has paid the detainee wages directly. However, effective February 1, 2015, the detainee wage payments for Port Isabel SPC have transitioned from ICE payment to contractor payment pursuant to the detention contract. With regard to San Diego CDF, the cost of the detainee wage payments is embedded in the bed day rate that the contractor charges ICE for the operation of the facility; therefore, the actual amount of agency funds used for the volunteer work program cannot be ascertained.

### III. PART 3 OF PLAINTIFF'S FOIA REQUEST 2013FOIA32547

8. Following the July 30, 2014 request from plaintiff's counsel, the ICE ERO CMU was one of the program offices tasked with locating responsive documents to part 3 of plaintiff's FOIA Request 2013FOIA32547, which requested "the total amount disbursed by ICE for Detainee Volunteer Wages for each year since January 1, 2003 to the amount budgeted for 2014." ERO CMU received the task and began reviewing ERO contract, invoice and financial records to determine what detainee wage payment information is available for ERO SPC and CDF contracts.

9. ICE does not have any system of records which tracks the total annual amount of agency funds disbursed to detainees for wages earned while participating in a volunteer work program or to reimburse service providers for wages paid to detainees for wages earned while

3

participating in a volunteer work program. The agency also does not track whether each IGA/IGSA facility offers a volunteer work program. ICE utilizes more than 280 IGSAs annually, and not all IGSAs contain separate line items for volunteer work program wages; in many instances, the amount for detainee wages is factored into the bed day rate, and so it is not possible to parse out the amounts that are expended for volunteer work programs offered at IGSAs. Accordingly, the agency does not have information responsive to the third part of plaintiff's FOIA Request 2013FOIA32547. ICE, however, is able to determine the amount of detainee wage payments made by contractors at its SPCs and CDFs. To determine the detainee wage payment amounts made by contractors, ERO detention facility contract task orders, monthly invoices and financial records, which include data contained within the Federal Financial Management System (FFMS), must be located and reviewed. The contract task order number must be available to identify the obligation in the financial system, as well as identify the contract line item number (CLIN). Financial expenditures for contracts, including detainee wages, are recorded by CLIN in ICE's financial system (Federal Financial Management System (FFMS)). However, there is insufficient information in FFMS to determine which CLIN each financial expenditure is intended to be applied against. To determine this, the applicable monthly invoice must be available to properly match a financial expenditure to a contract payment. While ICE's contracting system was able to identify most of the detention facility contract numbers as far back as contract year 2005, ICE's invoice processing system was not able to provide invoices prior to contract year 2009 for the ICE SPCs and CDFs.

**IV. PARTS 1 AND 2 OF PLAINTIFF'S FOIA REQUEST 2013FOIA32547**

10. In January 2015, ICE ERO CMU was tasked with locating responsive documents to parts 1 and 2 of plaintiff's FOIA Request 2013FOIA32547, which requested, among other

4

things, "all underlying documentation and analysis that informs the amounts set for [detainee volunteer wage] allocations for each ICE detention facility."

11. As a result, ICE ERO searched the contract and financial records for those detention facilities where it was known that detainee wages were paid. ICE's contract writing system (PRISM) was queried to determine which contracts contained a requirement for contractors to pay detainee wages for ICE. ICE's financial system (FFMS) and invoice processing system (WebView) also were queried to obtain the amount of detainee wages paid on a monthly basis at these facilities. During this process it was determined that detainee wages were paid directly by ICE at two detention facilities—El Paso SPC and Port Isabel SPC.

12. Prior to contract year 2009, ICE found that there was insufficient information across the ICE contract writing system (PRISM), the financial system (FFMS), and invoice processing system (WebView) to accurately and reliably determine the amount of detainee wages reimbursed by the agency.

13. However, with regard to contract years 2009-2014, ICE was able to search the contract and financial records for those detention facilities where it was known that detainee wages were paid, and ICE was able to locate consistent information between PRISM, FFMS, and WebView. ICE ERO then pulled the invoices for each of the facilities offering the work program to determine the funds reimbursed by ICE to the service provider upon receipt of an invoice.

V. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this seventh day of April 2015.

5

Roger Kissel
Chief, Enforcement and Removal Operations,
Contract Management Unit
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009