IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, <br><br> Plaintiff, <br><br> and <br><br> AKIMA GLOBAL SERVICES, LLC, <br><br> Intervenor-Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendants. | Case No. 14 C 3305 <br><br> Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

This is a reverse Freedom of Information Act ("FOIA") case brought under the Administrative Procedures Act, 5 U.S.C. § 701-06. The Plaintiff, Jacqueline Stevens ("Stevens"), in 2013 submitted a FOIA request to the United States Department of Homeland Security, Immigration and Custom Enforcement ("ICE") asking for, *inter alia,*

> ICE generated, received, or maintained requests, memoranda, and analysis used for budgeting and contractual allocations for individual private contractors and employees for Detainee Volunteer Wages. . . . To clarify, ICE demonstrably allocates funds to detention centers to disburse Detainee

> Volunteer Wages; I am requesting all underlying documentation and analysis that informs the amounts set for these allocations for each ICE facility.

In 2014, Stevens sought to enforce her FOIA request by filing the above lawsuit.

The intervenor, Akima Global Services, LLC ("AGS"), is in the business of providing detention management operations and detention health services to federal and other government clients. Among the contracts AGS has competed for and obtained from ICE is Contract No. HSCEM-14-00002, for detention management services at ICE's Krome Service Processing Center (the "Krome Contract").

Following the Stevens law suit filing, ICE determined that the Krome Contract was responsive to Stevens' FOIA request, because it contained information regarding wages paid to detainees at the Krome facility who participated in the volunteer work program as well as information about how AGS would employ detainees participating in the program. Accordingly, ICE notified AGS of its determination that the contract should be turned over to Stevens. The notice also requested that AGS provide ICE with a written response addressing whether any of the information in the Krome Contract is confidential business information that should be withheld under any FOIA exemption, particularly exemption 4 which

includes "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). ICE further informed AGS that its written response should include information regarding any "specific irreparable competitive harm that could result by releasing the Krome contract." ICE further informed AGS that its justification for withholding all or part of the contract should include:

> a detailed analysis of how release of the information would cause competitive harm, *i.e.,* how release of unit prices would allow competitors to "reverse-engineer" the pricing in order to determine how the prices were derived, how future prices will be established, and how the current pricing structure at issue in this contract would be relevant for any future government contract. Separate determinations of confidentiality must be made for each type of information, as opposed to a determination being made on the confidentiality of the total package.

ICE included an unredacted copy of the Krome Contract with the notice and advised AGS that ICE would make its own independent assessment of the Krome Contract, but that it would consider any written response that AGS submitted.

AGS responded to ICE's notice in March 2016 and requested that certain pricing and staffing information from the first 26 pages of the contract be redacted because it contained confidential financial information. AGS also requested that ICE withhold in full the 298 pages of the Krome Contract that

consisted of AGS' original proposal, which had been incorporated into the ratified contract. The reasons claimed by AGS for its requested withholdings were two: first, it claimed that release of the Krome proposal would weaken the government's ability to receive future proposals; and, second, it claimed that AGS would suffer substantial competitive harm if the bulk of the Krome Contract (including the proposal that had been incorporated into the contract) was released. AGS's specific explanation as to the likely competitive harm it would sustain was that the information obtained from its proposal "would allow competitors to have a 'road map' of [AGS's] bidding strategy and competitors would then copy [AGS's] proposal for future bids, significantly undermining [AGS'S] chances in the market place," and that AGS "has unique I.T. and monitoring systems which are considered trade secrets and discussion of these systems touches nearly every paragraph of the proposal." AGS also noted that the Krome Contract had previously been subject to another FOIA request in 2015 and after AGS's objection to disclosure, virtually the entire contact had been withheld by ICE.

ICE notified AGS in May 2016 that it disagreed with several of AGS's proposed redactions because AGS had not "detail[ed] potential competitive harm with the requisite specificity" that ICE had requested, but instead had furnished only conclusory

statements.  ICE also advised AGS that it had conducted its own review of the contract and enclosed a copy of the redactions. These redactions included discussions of AGS's information technology solutions, including its electronic monitoring systems.  ICE also agreed to withhold the proposed redactions to the first 26 pages of the contract, which apparently included the unit pricing for the various activities to be performed under the contract.

ICE and AGS met in June to try to reach an agreement on the redactions.  AGS remained adamant that the Krome proposal be withheld in full because it used the proposal as the foundation for all of its bidding efforts and its competitors would copy the proposal if it was released.  ICE in response explained that such wholesale withholding was not justified absent specific explanations why various portions of the proposal would cause competitive harm.  It further cautioned AGS that where the proposal language closely tracked the publicly available solicitation for bid, asserting propriety interest in such portions would be difficult.  AGS agreed to reexamine the Krome proposal and submit new versions.  However, its new version of redactions was virtually identical to its previous proposed redactions, except it agreed to the disclosure of several pages of the table of contents and a three page list of acronyms.

ICE issued its final agency decision of its intent to disclose the Krome Contract to Stevens in October 2016. The decision concluded that AGS's proposed redactions, which sought to withhold nearly the entire Krome Proposal, had not been adequately justified under Exemption 4. The decision further noted that AGS had failed to explain how specific portions of the proposal constituted confidential information or were likely to cause AGS substantial competitive harm. The decision specifically identified several chapters of the Krome proposal — Sanitation, Specific Diets, Injury and Illness, Personal Hygiene, and Background investigations — which AGS proposed to be withheld without any specific justification, even though they repeated verbatim or nearly verbatim the language in ICE's original solicitation or the publically available Performance-Based National Detention Standards 2011. The final notice included the redacted Krome proposal that ICE intended to disclose to Stevens. The redactions included any portion of the proposal referring to, or describing, AGS's electronic monitoring system.

Following ICE's issuance of its final notice, AGS moved to intervene in this lawsuit and filed a Complaint seeking to enjoin the disclosure of the redacted Krome Contract. The parties have now moved for summary judgment.

## II. LEGAL STANDARD

The parties agree that the judicial review of the agency's decision is pursuant to the Federal Administrative Procedure Act and the standard for review is "arbitrary and capricious." *Jurewicz v. U.S. Dep't of Agric.,* 741 F. 3d. 1326, 1330 (D.C. Cir. 2014) (citing 5 U.S.C. § 706(2) (A). Challenges to the government agency's decision are usually resolved by summary judgment. *Carney v. U.S, Dep't of Justice,* 19 F.3d 807, 812 (2nd Cir. 1994).

### A. The AGS Position

AGS makes four arguments in behalf of its Motion. First, that AGS's bid and the contract are not relevant to the FOIA request of the Plaintiff Jacqueline Stevens. Second, AGS points out that in 2015 ICE agreed to exempt pursuant to Exemption 4 almost the entire Krome proposal and contract which it seeks to have exempt here, and ICE has not explained the reason for its change of position. Third, it contends that the ICE's decision to disclose the Krome contract and bid is impermissibly conclusory. Fourth, it contends that its bid and the Krome contract should be exempt because it is commercial, obtained from a person, and confidential, so as to meet the requirements of Exemption 4.

## B. ICE's Position

ICE in support of its own Motion for Summary Judgment and in response to AGS's Motion contends: first, that Jacqueline Steven's request certainly does include the subject contract and proposal; second, ICE explained that its decision to exempt a previous bid and contract of AGS from disclosure occurred because the FOIA requester did not challenge the non-disclosure so ICE's attorneys did not review the matter. Now since ICE is in court pursuant to the requester's lawsuit, ICE's attorneys have reviewed the request and the objection and has found that ICE's redacted version is proper and according to law; third, ICE's decision specifically pointed out where AGS failed to explain how several portions of the proposal, *e.g.,* Special Diet, Sanitation, Injury and Illness, etc., which closely tracked the language in the ICE's proposal to bidders, would harm it competitively; and fourth, AGS has wholly failed to show with any specificity that disclosure of its Krome proposal would cause it substantial competitive harm nor did it show that ICE's ability to obtained future proposals would be impaired.

## III. DISCUSSION

FOIA was enacted in 1966 to insure public access to information from governmental agencies by creating a judicially enforceable public right to such information. However, Congress

realized that legitimate public and private interests could be harmed by the release of certain types of information. *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152 (1989). As a result Congress created nine exempt categories, Exemption 4 being one of them. These exemptions are to be interpreted narrowly. *Tigue v. U.S.Dep't of Justice,* 312 F.3d 70, 76 (2nd Cir. 2002). An agency's decision to disclose as stated above is subject to the arbitrary and capricious standard. What is apparent in this case is that AGS has made no effort to demonstrate any basis that would allow the Court to find that ICE's decision was arbitrary or capricious. The sum and substance of its position is that it is extremely knowledgeable about contracting with the government and its contract and proposal would be a "road map" of [AGS]'s bidding strategy and competitors would then copy [AGS]'s proposal for future bids, significantly undermine [AGS]'s chances of success in the market place." It further argued that it has a "unique I.T. and monitoring system" that it considered to be a trade secret and "discussion of these systems touches nearly every paragraph of the proposal." In response to its position, ICE agreed to make substantial redactions concerning AGS's pricing and its use of intellectual property and monitoring system. In the entire negotiation with AGS, ICE disclosed its position to AGS on three separate occasions and on

two of these occasions it made significant concessions agreeing to redactions concerning pricing, monitoring, and AGS's intellectual property. However, AGS never budged from its position that the entire contract needed to be withheld. Even after ICE had made its decision final, AGS did not put in writing any defense of its requested redaction other than its "road map" statement, until November 2016, when its president sent ICE a "declaration." However, the declaration itself, according to AGS, was merely an attempt to place in writing what AGS had previously claimed were its arguments for competitive harm that it made during the negotiations. These arguments did not go beyond the so called "road map" argument, nor did the declaration AGS submitted do so. ICE contends that presenting arguments after the agency has made its decision is too late to have them included in the agency record, citing *AT&T Information System, Inc. v. GSA,* 810 F.2d 1233, 1236 (D.C. Cir. 1987), and therefore cannot be considered. However the AT&T case does provide for a limited exception to the rule relied upon by ICE so that an agency may consider matters that are merely "explanatory of the original record and contain no new rationalizations." In fact AGS virtually admits that the declaration in substance merely repeats AGS's previous position concerning the "road map." So the declaration really contained

nothing new to add to the record that would require a different outcome.

One further argument can be made in favor of disclosure. In addition to AGS's bid, AGS also seeks to prevent disclosure of its contract with ICE, apparently because it incorporates the bid into the contract. In *Detention Watch Network v. U.S. Immigration & Customs,* 2016 WL 3926451 (S.D.N.Y. July 14, 2016), the court held that a contract itself cannot be said to come from a "person" because the contract terms come from negotiations between the agency and the contractor and are therefore not from a person and not exempt. If the Court was to follow this case it would end the matter. However, the Court believes that there is substantial case law that applies Exemption 4 to contract line items where substantial harm to competition can be reasonably assumed. *See, e.g., McDonnell Douglas Corp. v. NASA,* 180 F.3d 303. 305-6 (D.C. Cir. 1999). Nevertheless following *Detention Watch* does not alter the Court's conclusion that AGS has failed to substantiate its position that the entire contract be withheld. Certainly the type of services AGS has agreed to perform for ICE is disclosable under FOIA.

How AGS promises to perform the specific services could well be confidential if AGS proposes to use certain intellectual

property in order to carry out its obligations. However the Court understands that ICE has already agreed to redact such information. There is no evidence of any possible competitive injury to AGS that the Court can find in the record that could result from the disclosure.

In regard to AGS's argument that its contract is not among the documents requested by the Plaintiff, suffice to say that is not a defense to disclosure. It is either privileged or it is not. It is up to ICE and the requester to decide whether the information sought is relevant to what was requested. In any event the Stevens' request asked for information concerning "detainee volunteer wages" and how detainees participating in the volunteer work program would be treated. Certainly the administrator's contract would include information relevant to these matters. Moreover ICE is a Defendant in the FOIA suit brought by Stevens and must be allowed to make strategic litigation decisions. Therefore ICE's decision to disclose the administrative contract would not be arbitrary and capricious. *Chrysler Corp. v. Brown,* 441 U.S. 281 (1979).

AGS's next argument is that ICE, by failing to exempt the Krome Contract, was changing its position that the Krome contract was exempt, and an agency must supply a "reasoned analysis" for such a new policy, citing *Abraham Lincoln Memorial*

*Hospital v. Sebelius,* 698 F.3d 536, 555 (7th Cir. 2012). However, as ICE pointed out, the previous "decision" was not a formal decision of the agency itself but was an informal ruling made by an employee. Apparently there was no objection to the redaction made by the requester so no formal agency review was undertaken. Such an informal decision made by an employee would not be authoritative, unlike the decision at issue here, which resulted from a full agency review. As stated in *Abraham Lincoln Memorial Hospital,* "[t]here is no authority for the proposition that a lower component of a government agency may bind the decision making of the highest level." Citing *Amor Family Broadcasting Group v. FCC,* 918 F.2d 960 (D.C. Cir. 1991). AGS does not contend that ICE itself issued a decision granting the earlier redactions.

Next we take up AGS's argument that ICE's decision itself was impermissibly conclusionary. With this argument AGS is attempting to turn the FOIA issue on its head. The decision of ICE was based on the failure of AGS to articulate some meaningful basis for demonstrating that the disclosure would cause substantial harm to its competitive position. In other words AGS appears to be asking ICE to show how disclosure would not cause competitive harm to AGS. This is not a basis for overruling the agency decision. AGS cites *General Electric Co.*

*v. U.S. Nuclear Regulatory Agency,* 750 F.2d 1394, as authority for this argument. However the *General Electric* case shows the deficiency in AGS's argument. In that case, the court criticized the USNRA's decision that disclosure would not cause competitive injury because the decision ignored all of the evidence submitted by General Electric, which consisted of affidavits, letters in the file, and a memorandum Agency's staff economist prepared, indicating the presence of competitive injury. Here the evidence submitted by AGS consisted solely of statements made by its employees that is bid and contract would constitute "a road map" enabling its competitors to under bid it. While ICE's decision may seem to be somewhat short of facts that it considered but this was because AGS submitted so few for it to consider.

AGS's final contention is that it did in fact make a viable case that disclosure in this case would cause it competitive injury and that disclosure would make it more difficult for ICE to obtain competitive bids in the future because a bidder would be reluctant to bid knowing that is bid might be disclosed.

We need not take long to consider AGS's case on the merits. It wholly failed with any specificity to allege how its competitive position would be harmed by disclosure of various provisions of the bid and contract from which ICE had already

agreed to redact pricing and intellectual property information. Its concern for ICE's future ability to obtain future competitive bids is laudable but it certainly is the agency that is in the best position to make this determination. As the Seventh Circuit said in *General Electric,* "there is not much room for judicial review of the quintessential managerial judgment that disclosing information submitted to the agency in confidence will not prevent the agency from obtaining the information in the future. Especially where the Commission resolves doubts in favor of disclosure."

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court finds that the ICE's decision to disclose the AGS's bid and contract for the Krome facility is not arbitrary and capricious. Defendant's Cross-Motion for Summary Judgment [ECF No. 77] is granted. The Motion for Summary Judgment of AGS [ECF. No. 68] is denied.

**IT IS SO ORDERED.**

                                                                    _____
                                                                    Harry D. Leinenweber, Judge
                                                                    United States District Court

Dated: 4/19/2017