UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 14 C 3305 |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) ) Judge Leinenweber ) ) ) ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S LR 56.1 STATEMENT OF MATERIAL FACTS AND DEFENDANT'S STATEMENT OF ADDITIONAL FACTS**

Defendant U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, responds pursuant to Local Rule 56.1(b)(3) to plaintiff Jacqueline Stevens's Statement of Material Facts (Dkt. 123) and submits the following additional material facts:

1.  Plaintiff is a Professor of Political Science and the Director of the Deportation Research Clinic at Northwestern University. (ECF #6 Answer ¶5).

    **Response:** ICE does not dispute this statement.

2.  Defendant U.S. Department of Homeland Security, Immigration and Customs Enforcement is an executive agency component of the United States government principally responsible for enforcing federal immigration laws. DHS and ICE are agencies within the meaning of 5 U.S.C. § 552(f)(1). ICE has possession and control over all agency records Professor Stevens sought through this litigation and this Motion to Compel. (ECF #6, Answer ¶6).

    **Response:** Disputed. ICE does not possess and control all of the agency records Stevens seeks in this lawsuit. *See* Dkt. 35 at ¶ 2. ICE does not dispute the remaining statements

in paragraph 2.

3.     On 24 August 2013 Stevens submitted the following FOIA request to ICE:

(1) ICE generated, received, or maintained requests, memoranda, and analysis used for budgeting and contractual allocations for individual private contra[c]tors and employees for Detainee Volunteer Wages, as designated, for instance, in the attached supplemental contract at p. 3 of the pdf, item 004, "funding in support of CLIN 1005, Detainee Volunteer Wages." To clarify, ICE demonstrably allocates funds to detention centers to disburse Detainee Volunteer Wages; I am requesting all underlying documentation and analysis that informs the amounts set for these allocations for each ICE detention facility. I am requesting these documents for all ICE ERO contracted facilities from January 1, 2003 to the present. This includes but is not limited to: - e-mail, faxes, notes, memoranda, reports from ICE or private companies to the ICE officials handling Immigrant and Customs Enforce[ment] budgetary decisions for Detainee Volunteer Wages. Please include as well *the underlying Houston CCA contract that includes the CLIN 1005 referenced in the supplemental contract* quoted above at p. 3 004 (and attached);

(2) All intra- inter-agency analysis of the ICE Detainee Volunteer Work Program in all media maintained by any component of ICE, including but not limited to grievances, litigation, public relations, and Congressional correspondence from January 1, 2003 to present; [and]

(3) the total amount disbursed by ICE for Detainee Volunteer Wages for each year since January 1, 2003 to the amount budgeted for 2014. (ECF No. 6, Answer ¶54).

**Response:**     ICE does not dispute this statement.

4.     ICE's FOIA office received Stevens's FOIA request and assigned it a FOIA tracking number 2013FOIA32547. (ECF No. 6, Answer ¶55-57).

**Response:**     ICE does not dispute this statement.

5.     After ICE refused to comply with its FOIA obligations, Stevens filed this lawsuit on 6 May 2014. (ECF #1, Complaint).

**Response:**     ICE does not dispute that Stevens filed this lawsuit in May 2014 but disputes that ICE "refused to comply with its FOIA obligations," a statement that Stevens provides no evidence to support.

2

6.      Between 2014 and 7 June 2018 the parties engaged in efforts to streamline and manage the production of records responsive to Prof. Stevens's FOIA request. (ECF #22; Glazer Decl. ¶5).

**Response:**    ICE does not dispute this statement.

7.      In June 2018 the parties agreed that ICE would conduct a supplemental search based on "search terms" provided by Stevens "for the supplemental search of emails and other records in the possession of Kevin Landy, Daniel Ragsdale, Andrew Lorenzen-Strait, Thomas Homan, John Morton and Sarah Saldana, compiled during the policy formulation process that culminated in the Performance-Based National Detention Standards, and specifically PBNDS 5.8 -Voluntary Work Program." (Exhibit A to Glazer Decl). The parties also agreed that the temporal scope of the supplemental search will be between 2011 and 2014. (Exhibit B to Glazer Decl.).

**Response:**    ICE does not dispute this statement other than to add that the parties agreed that the supplemental search would be of the six custodians' email and email attachments only. Ex. 1, Fuentes Decl. ¶¶ 9-12.

8.      On 20 March 2019 and 8 May 2019 ICE produced to Plaintiff 707 pages of documents responsive to the supplemental search. (Exhibit C to Glazer Decl.). The supplemental production is heavily redacted. (Exhibit D to Glazer Decl.).

**Response:**    ICE does not dispute that it produced documents in connection with the supplemental search in March and May 2019. ICE disputes that the supplemental production is "heavily" redacted given that Stevens does not quantify what she means and only challenges redactions in 93 of the 707 produced pages. Fuentes Decl. ¶¶ 9-19.

9.      Specifically, ICE redacted the email addresses' domains, certain names of senders and recipients of the emails in the supplemental production, and the majority of the names in the

3

"cc" and "bcc" lines of said emails pursuant to 5 U.S.C. §552(b)(6). *Id*. ICE also redacted large portions of the supplemental production pursuant to 5 U.S.C. §552(b)(5). (Exhibit D to Glazer Decl.)

**Response:** Disputed. While ICE initially redacted email domain names, it has since agreed to lift those redactions on the few pages where they appear. Fuentes Decl. ¶ 19. Furthermore, because most of the pages consist of internal emails among agency employees, the remaining email communications within the 93 pages Stevens challenges in her motion do not contain email domains but rather only the first and last name of the agency employee sender, recipient, or those included on the "cc" lines, which ICE has redacted in accordance with Exemptions 6 and 7(C). *Id.* Additionally, the "bcc" line does not appear on any of the responsive records located and produced as part of the supplemental search. *Id.* Finally, ICE disputes that ICE redacted "large" portions of the supplemental production pursuant to Exemption 5 given that Stevens does not quantify what she means and only challenges redactions in 93 of the 707 produced pages. *Id.* ¶¶ 9-19. ICE does not dispute that it redacted information from the supplemental productions pursuant to FOIA exemptions 5, 6, and 7(C). *Id.* ¶ 15.

10. Since May 2019 the parties have engaged in extensive meet and confer discussions to address Stevens's objections to the redactions and exemptions applied to the 2019 supplemental production. As a result, ICE agreed to produce and lift the b(5) redactions to certain pages from the supplemental production, to wit, 2015-ICLI-0026 SUPP at pages Bates stamped 36-38, 68-69, 123-24, 126-27, 129-30, 132-33, 135, 141,153, 161, 292-96, 339-40, 359, and 437-428. (Glazer Decl.¶8)

**Response:** ICE does not dispute this statement.

4

11. ICE refuses to unredact and/or segregate non-exempt information from the following records:2015-ICLI-0026 SUPP at pages Bates stamped 21, 31-33, 46, 87-89, 104-110, 136-138, 142-46, 149, 155-163, 197, 199-204, 230, 238, 259, 290-96, 298-300, 337-338, 343, 348, 372, 428-29, 437-38, 454-55, 473-76, 483-89, 494-96, 498-500, 501-03, 506-08, 549, 552-55, 611. (Exhibit D to Glazer Decl.) Defendant has invoked 5 U.S.C. §552(b)(5) to justify the withholding of responsive records.

**Response:** Disputed. ICE has invoked FOIA exemptions 5, 6, and/or 7(C) to justify the redactions applied to the pages in the supplemental production referenced in paragraph 11. Fuentes Decl. ¶ 15, 20-39. ICE does not dispute the remaining statements in paragraph 11.

12. In the entire supplemental production ICE has redacted the following: (1) the domain name of all email addresses; (2) some of the names of recipients and senders of emails; (3) some of the names in the "cc" and "bcc" lines of the respective email correspondence. Defendant has invoked 5 U.S.C. §552(b)(6) to justify the withholding of responsive records.

**Response:** Disputed. While ICE initially redacted email domain names, it has since agreed to lift those redactions on the few pages where they appear. Fuentes Decl. ¶ 19. ICE does not dispute that it redacted some names pursuant to FOIA exemptions 6 and 7(C). *Id.* ¶¶ 28-39. Additionally, the "bcc" line does not appear on any of the responsive records located and produced as part of the supplemental search. *Id.* ¶ 19.

13. Plaintiff has disputed and contested the redactions and withholding but Defendant has declined to produce the requested records or segregate the non-exempt information. (Glazer Decl. ¶11).

**Response:** Disputed. The parties have had no discussions about the segregation of non-exemption information, and Stevens provides no evidence to the contrary. ICE does not

dispute that the parties could not agree about the release of information ICE withheld under FOIA exemptions 5, 6, and 7(C) that is the subject of Stevens's motion. Fuentes Decl. ¶¶ 15-39.

### ICE's Statement of Additional Material Facts

14. This is an action brought under the Freedom of Information Act ("FOIA"), and the court has subject matter jurisdiction over this action pursuant to 5 U.S.C. § 552 and 28 U.S.C. § 1331. Answer ¶ 3.

15. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) because plaintiff Jacqueline Stevens resides within this district. *Id.* ¶ 4.

16. Stevens also submitted three additional FOIA requests to the ICE FOIA office in 2013. Fuentes Decl. ¶ 8.

17. She later filed this lawsuit in May 2014 alleging among other things that ICE had not responded to the four FOIA requests. *Id.*

18. Following the filing of this lawsuit, ICE initiated searches in response to the four FOIA requests and made 25 productions of responsive documents to Stevens over the next few years. *Id.* ¶ 9.

19. In June 2018, the parties reached a global resolution over their remaining disputes about the four FOIA requests. *Id.* ¶ 11.

20. As part of that resolution, ICE agreed that in connection with the volunteer work program FOIA request, it would conduct a supplemental search of the emails and attachments of six agency personnel Stevens had identified for a three year period from 2011 to 2014 using agreed upon search terms and produce any collected documents that were responsive to that FOIA request. *Id.* ¶¶ 11-12.

21. The parties worked on refining the search terms over the next several months and

eventually agreed on the terms that would be used for the search. *Id.* ¶ 12.

22. The agency then utilized its e-discovery platform to search the emails and attachments of the six ICE personnel (upper management ICE employees) using the agreed upon search terms, reviewed the collected records for responsiveness to the Volunteer Work Program FOIA request, and identified 707 pages of responsive records. *Id.* ¶ 13.

23. The ICE FOIA office reviewed the responsive records and determined that some of the documents contained sensitive and/or privileged information as well as personally identifiable information. *Id.* ¶ 14.

24. As a result, the ICE FOIA office conducted a line-by-line review of each responsive document, applied redactions to the documents in accordance with FOIA exemptions 5, 6 and 7(C), and released the documents to Stevens in two productions in March and May 2019. *Id.* ¶¶ 14, 40-42.

25. ICE also confirmed that all information not exempted from disclosure by FOIA exemptions 5, 6, and 7(C) was correctly segregated where possible and released to Stevens. *Id.* In one instance involving an Exemption 5 withholding, the factual information was so intertwined with privileged information that it could not be segregated. *Id.* ¶ 15 (*Vaughn* index at 35-36).

26. Of the 707 pages that ICE produced, Stevens is challenging the Exemption 5 and 6 redactions ICE made to 93 of the pages; she is not challenging the Exemption 7(c) redactions ICE made to those pages. *Id.* ¶ 18. Of the 93 pages, ICE withheld 3 pages in full, and released the rest subject to partial FOIA withholdings. *Id.*

27. A complete description of the withholdings Stevens is challenging on those 93 pages and the bases for the agency's withholding of information on those pages is detailed in the accompanying *Vaughn* index ICE has prepared. *Id.* ¶¶ 15-17.

28. The challenged records include emails and attachments addressing: (1) agency responses to media or Congressional inquiries; (2) an editorial that agency employees were preparing in response to a New York Times article; (3) a hunger strike and administrative segregation at an ICE detention facility in Tacoma, Washington; and (4) legal advice that was provided on those issues. *Id.* ¶¶ 18-39.

29. All of the challenged records with the exception of 2 of the 93 pages consist of internal communications between employees of the U.S. Department of Homeland Security ("DHS"), the agency under which ICE falls. *Id.* ¶ 18.

30. The information protected from disclosure under the attorney-client privilege consists of four records containing confidential communications between agency attorneys and their client (*i.e.*, other agency personnel) about the volunteer work program and its application to detainees. *Id.* ¶¶ 25-27.

31. Specifically, agency attorneys and others discussed in those records: (1) certain legal standards for inclusion in a draft agency response to the media; (2) legal advice about if and how to respond to a letter from a legal advocacy group; and (3) legal advice about an active case in litigation in which ICE was a party. *Id.*

32. The information protected from disclosure under the deliberative-process privilege were internal drafts, discussions, deliberations, and recommendations by and among agency personnel about: (1) possible agency responses to media and Congressional inquiries; (2) an agency op-ed in response to a New York Times article; and (3) agency employees' opinions, analysis and recommendations in connection with a hunger strike and administrative segregation at an ICE detention facility in Washington, engagement with advocacy groups, and issues related to application of the Voluntary Work Program to ICE detainees in various detention facilities. *Id.*

¶¶ 21-24.

33. The first version of a press release may sometimes contain inaccurate statistics or facts. *Id.* ¶ 24. Upon secondary review, operational components with direct access to data correct any errors to ensure the public receives correct information. *Id.* ¶¶ 22-24.

34. The portions of the records ICE withheld under Exemption 6 contain names or other identifying information of third parties and lower level ICE employees. *Id.* ¶¶ 31-39. For instance, ICE withheld identifying information such as signatures, contact information, biometric information, case history, and immigration status. *Id.*

35. ICE did not redact the names of higher-level ICE and DHS employees on the records released to Stevens following the supplemental search. *Id.* ¶ 37.

36. The information for which the ICE FOIA Office asserted Exemption (b)(7) satisfies that exemption's threshold requirement. *Id.* ¶¶ 28-30.

37. ICE invoked Exemption 7(C) to protect the names and other identifying information of third parties and lower level ICE employees. *Id.* ¶¶ 31-39.

38. The third parties mentioned in these records produced to Stevens as part of the supplemental search did not consent to the disclosure of their personally identifiable information. *Id.* ¶¶ 36, 39.

    Respectfully submitted,

    JOHN R. LAUSCH, Jr.
    United States Attorney

    By: s/ Prashant Kolluri
        PRASHANT KOLLURI
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 886-9085
        prashant.kolluri@usdoj.gov